WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel Hamilton,<br><br>            Plaintiff,<br><br>v.<br><br>Yavapai Community College District, et al.,<br><br>            Defendants. | No. CV-15-08095-PCT-GMS<br><br>**ORDER** |

Pending before the Court is Defendant North-Aire, LLC ("North-Aire"), Justin Scott ("Scott") and Angela Scott's Motion to Dismiss (Doc. 49). For the following reasons, the Motion is granted in part and denied in part.

**BACKGROUND**

Plaintiff-Relator Hamilton's Complaint alleges that Defendants North-Aire and Scott violated the False Claims Act ("FCA") by knowingly assisting Yavapai College ("Yavapai") to submit false claims to the Department of Veteran's Affairs ("VA"). (Doc. 1.) Defendant North-Aire is managed by Defendant Scott. (Doc. 1 at 3.)

In October of 2011, North-Aire entered into an agreement with Yavapai to offer an Associate of Applied Science ("AAS") degree for airplane operations. (Doc. 1 at 6.) Under the agreement, North-Aire provided the flight course component of the airplane program ("PPA") while Yavapai offered all of the ground training. (Doc. 1 at 7.) North-Aire would then invoice Yavapai for the costs of the flight course, and Yavapai would submit these invoices to the VA. (Doc. 1 at 14.) The result of this system was that

North-Aire was reimbursed by funds Yavapai received from the VA. (Doc. 1 at 11.)

To receive education benefit funding from the VA, Yavapai and North-Aire had to comply with Regulation 4201, or the "85/15 Rule."  38 C.F.R. § 21.4201(f)(2)(i). Regulation 4201 requires that no more than 85% of students enrolled in a specific course of study be supported by the VA or by the institution at any given time.  38 C.F.R. § 21.4201(a).  The institution is responsible for reporting these numbers accurately to the VA.  38 C.F.R. § 21.4201(f).  A separate 85/15 calculation is required anytime a course varies in a material way from another, such as through degree requirements, length, or course objectives.  38 C.F.R.§ 21.4201(e).

Plaintiff-Relator Hamilton is a former employee of Yavapai.  He asserts that "[f]rom the inception of the Airplane Program in spring 2012," North-Aire never complied with the 85/15 Rule.  (Doc. 1 at 11–12.)  Instead, he alleges that the Defendants conspired with Yavapai to knowingly count students as non-supported who were not eligible for that status.  (Doc. 1 at 12.)

According to the Complaint, there were several tactics employed by the Defendants to accomplish this.  First, Hamilton asserts that beginning in spring 2012, the Defendants allegedly included students that were not admitted to the program, part-time students, students receiving financial aid from the institution, and students that were not currently taking flight courses as "non-supported" students for their calculations.  (Doc. 1 at 14.)  Additionally, Hamilton alleges that North-Aire paid for certain civilian students' tuition, but never veterans. (Doc. 1 at 35.)  North-Aire also participated in a scholarship program with Yavapai to donate 1,000 dollars for every North-Aire student that graduated. (Doc. 1 at 36.) However, this scholarship program never benefited a single veteran, and was allegedly targeted at only providing support for students that would later be classified as "non-supported" for the purposes of the 85/15 calculation. (Doc. 1 at 36.)

Hamilton's Complaint also asserts that Yavapai, with North-Aire's knowledge, created a combined AVT program in summer 2013 to mislead the VA into believing that its four independent flight programs were a single program under the 85/15 Rule. (Doc. 1

at 37.) On July 30, 2012, a meeting was held where Morgan, an executive for Yavapai, voiced concern over creating the combined AVT program because he was unsure how the "VA would analyze the combined degree for 85/15 compliance." (*Id.*) Defendant Scott was present at this meeting. (*Id.*) Despite this uncertainty, the Defendants participated in the combined degree program beginning in summer 2013. (*Id.*)

Additionally, beginning in fall 2013 Defendants "knowingly counted ineligible non-airplane flight majors as non-supported students in 85/15 compliance calculations." (Doc. 1 at 38.) These included high school students that were part of a Joint Technology Education District ("JTED") program. JTED students had different degree requirements from those in the AAS Airplane Program. (Doc. 1 at 39.) These differences led Ms. Jarrell, a Yavapai employee, to inform Yavapai and North-Aire representatives that "there is a statute stating [the programs] can't count the JTED students as civilians." (Doc. 39.) Despite uncertainty regarding the legality of the program, North-Aire started to include JTED students as non-supported students in their 85/15 compliance calculations in fall 2013. (*Id.*)

Hamilton asserts that each of these endeavors constitutes a violation of the False Claims Act, and that the Defendants failure to repay the federal government for funds it received during this time period violates the reverse FCA provision. The Defendants now bring a Motion to Dismiss under Rule 12(b)(6) due to the Complaint's perceived failure to allege the requisite scienter for a violation of the FCA. Therefore, at issue here is whether Relator Hamilton adequately alleged the requisite scienter against the current Defendants.

**DISCUSSION**

**I.     Legal Standard**

To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While "a complaint need not contain

- 3 -

1  detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is
2  plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir.
3  2008) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the
4  plaintiff pleads factual content that allows the court to draw the reasonable inference that
5  the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678
6  (2009) (citing *Twombly*, 550 U.S. at 556).  The plausibility standard "asks for more than a
7  sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts
8  that are 'merely consistent with' a defendant's liability, it 'stops short of the line between
9  possibility and plausibility of entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at
10 555) (internal citations omitted).

11 When analyzing a complaint for failure to state a claim under Rule 12(b)(6), "[a]ll
12 allegations of material fact are taken as true and construed in the light most favorable to
13 the nonmoving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996).  However,
14 legal conclusions couched as factual allegations are not given a presumption of
15 truthfulness, and "conclusory allegations of law and unwarranted inferences are not
16 sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir.
17 1998).

18 Because the FCA targets falsity, the heightened pleading standard of Rule 9(b)
19 applies to FCA claims.  *Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
20 637 F.3d 1047, 1054 (9th Cir. 2011).  Rule 9(b) requires that a party alleging fraud "must
21 state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P.
22 9.  This requires the party to establish "the who, what, when, where, and how of the
23 misconduct charged, as well as what is false or misleading about [the purportedly
24 fraudulent] statement, and why it is false." *Cafasso*, 637 F.3d at 1055 (internal citations
25 and quotations omitted).  Rule 9(b) does provide that "malice, intent, knowledge, and
26 other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).
27 However, qui tam claims arising under the FCA must allege sufficient facts illustrating
28 that the defendant's scienter went beyond "innocent mistakes, mere negligent

misrepresentations, and differences in interpretations." *U.S. v. Corinthian Colls.,* 655 F.3d 984, 996 (internal citations and quotations omitted).

## II.     The False Claims Act and the 85/15 Rule

The FCA imposes liability on any individual that knowingly defrauds the federal government.  31 U.S.C. § 3729.  Section 3730(b) of the FCA empowers individuals to "file suit on behalf of the United States seeking damages from persons who file false claims for government funds." *Hooper v. Lockheed Martin Corp.,* 688 F.3d 1037, 1041 (9th Cir. 2012).  To establish a claim under the FCA, a plaintiff must establish that the defendant acted knowingly.  The FCA defines the terms "knowingly" and "knowing":

> **(A)** that a person, with respect to information—
>    **(i)** has actual knowledge of the information;
>    **(ii)** acts in deliberate ignorance of the truth or falsity of
>        the information; or
>    **(iii)** acts in reckless disregard of the truth or falsity of
>        the information; and
> **(B)** require no proof of specific intent to defraud

31 U.S.C. § 3729.  Accordingly, a plaintiff can adequately plead scienter for the purposes of the FCA if he alleges that the defendant acted with reckless disregard.

A defendant may act in reckless disregard for the falsity of the information if he fails to familiarize himself with the legal requirements for government compensation. *See United States v. Mackby*, 261 F.3d 821, 828 (9th Cir. 2001) (those who seek government funds have a "duty to familiarize themselves with the legal requirements for payment."); *United States v. Bourseau*, 531 F.3d 1159, 1168 (9th Cir. 2008).  In *Bourseau*, the Ninth Circuit explained that the legislative history of the FCA indicated that "in defining knowingly, Congress attempted to reach what has become known as the 'ostrich' type situation where an individual has 'buried his head in the sand' and failed to

- 5 -

make simple inquiries which would alert him that false claims are being submitted." *Bourseau*, 531 F.3d at 1168 (9th Cir. 2008) (internal citations and quotations omitted). Therefore, "individuals and contractors receiving public funds have some duty to make a limited inquiry so as to be reasonably certain they are entitled to the money they seek." *Id.* However, "proof of mistakes is not evidence that one is a cheat, and the common failings of engineers and other scientists are not culpable under the Act." *Hagood v. Sonoma Cty. Water Agency*, 81 F.3d 1465, 1478 (9th Cir. 1996) (internal citations and quotations omitted). Therefore, reckless disregard requires a showing of something more than negligence. *Id.*

Regulation 4201 states that the "Department of Veterans Affairs shall not approve an enrollment in any course for an eligible veteran, not already enrolled, for any period during which more than 85 percent of the students enrolled in the course are having all or part of their tuition, fees or other charges paid for them by the educational institution or by VA." 38 C.F.R. § 21.4201. Furthermore, "[a]n 85–15 percent ratio must be computed for each course of study or curriculum leading to a separately approved educational or vocational objective." 38 C.F.R. § 21.4201(e).

Regulation 4201 also outlines the requirements for determining which students may be considered "non-supported" for the purposes of 85/15 calculations. 38 C.F.R. § 21.4201(e)(2). Undergraduates that do not receive institutional aid are considered non-supported, even if they receive federal aid other than VA benefits. *Id.* Undergraduates may also receive institutional aid and be considered non-supported, but only if the institution considers both veterans and civilians equally when awarding aid packages. *Id.* The same rule applies to non-college degree students receiving institutional aid; they may be considered non-supported, but only if veterans had the same opportunity to obtain institutional aid. *Id.* Separate 85/15 Rule ratios must be calculated "for each course of

- 6 -

study or curriculum leading to a separately approved educational or vocational objective." 38 C.F.R. § 21.4201(e)(1).

### A. Counts One and Two: Violations of 31 U.S.C. § 3729(a)(1)(A) and 31 U.S.C. § 3729(a)(1)(B).

The FCA imposes liability for those that "knowingly present, or cause to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A). It also imposes liability on anyone that "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B). This liability extends to "any person who knowingly assisted in causing the government to pay claims which were grounded in fraud, without regard to whether that person had direct contractual relations with the government." *Mackby*, 261 F.3d at 827 *quoting United States ex rel. Marcus v. Hess,* 317 U.S. 537, 544–45 (1943). Therefore, "a person need not be the one who actually submitted the claim forms in order to be liable." *United States v. Mackby*, 261 F.3d at 827.

In Count One, Hamilton alleges that the Defendants "knowingly present[ed], or caus[ed] to be presented, a false or fraudulent claim for payment or approval" by failing to comply with the 85/15 Rule in North-Aire's portion of the airplane program, by contributing to a civilian-only scholarship program, by paying tuition for non-veteran students, and by invoicing Yavapai for flight fees that would be fraudulently reimbursed by the VA. 31 U.S.C. § 3729(a)(1)(A). Count Two of Hamilton's Complaint alleges that Defendants violated 31 U.S.C. § 3729(a)(1)(B) by knowingly causing Yavapai "to use false records or statements including false certifications of compliance with VA enrollment ratios and funding requirements" to assist Yavapai's "false or fraudulent claims paid or approved by the VA." (Doc. 1 at 42.) Hamilton alleges that this occurred every semester from "spring 2012 until at least fall 2013." (Doc. 1 at 9.)

The Defendants argue that the Relator failed to adequately allege that they "knowingly" violated the FCA by miscalculating the 85/15 Rule, contributing to a scholarship fund that only benefited non-veterans, and invoicing Yavapai for flight fees

- 7 -

that were reimbursed by the VA. (Doc. 49.) Therefore, the question at hand is whether the Complaint asserts that North-Aire acted with at least reckless disregard in each alleged violation.

### 1. Claims relating to North-Aire's Failure to Comply with the 85/15 Rule for North-Aire's Portion of the Airplane Program.

The Complaint alleges that from spring 2012 to fall 2013, Defendant North-Aire inappropriately included classes of students as "nonsupported." (Doc. 1 at 33.) These included part-time students, students from the JTED program, students that received institutional aid from North-Aire, and students that were enrolled in other objectives within the combined AVT degree program. (Doc. 1 at 13–32.)

As a recipient of public funds, North-Aire had "some duty to make a limited inquiry so as to be reasonably certain they are entitled to the money they seek." *Bourseau*, 531 F.3d at 1168 (9th Cir. 2008) (internal citations and quotations omitted). Reckless disregard can be illustrated by the Defendants' failure to "make simple inquiries which would alert him that false claims are being submitted." *Id.* Hamilton adequately alleged scienter, and therefore his claims under Count One are not dismissed.

#### a. North-Aire's Inclusion of Part-Time, Unadmitted, and Inactive Flight Students as Non-Supported.

The Complaint alleges that Defendant North-Aire inappropriately included part-time students, unadmitted students, and students that were not currently taking flight classes ("inactive flight students") as "non-supported" for the purposes of the 85/15 calculations. (Doc. 1 at 13–32.) As a recipient of public funds, North-Aire had "some duty to make a limited inquiry so as to be reasonably certain they are entitled to the money they seek." *Bourseau*, 531 F.3d at 1168 (9th Cir. 2008) (internal citations and quotations omitted). However, "proof of mistakes is not evidence that one is a cheat," and "common failings" are not actionable under the FCA. *Hagood v. Sonoma Cty. Water Agency*, 81 F.3d 1465, 1478 (9th Cir. 1996) (internal citations and quotations omitted).
/ / /

The Complaint adequately alleges facts that make it plausible that North-Aire knowingly violated the FCA by including part-time, unadmitted, and inactive flight students in its 85/15 calculations as non-supported. Despite its duty pursuant to *Bourseau*, North-Aire did not inquire whether it was proper to consider these students as non-supported. (Doc. 1 at 12.) If it had, the Complaint alleges facts that indicate that North-Aire would have discovered that their practices were not proper. North-Aire's business partner, Yavapai, knew that North-Aire had to comply with the 85/15 rule because its other flight subcontractor had to comply with the 85/15 rule. (Doc. 1 at 33.) Yavapai was also warned by the VA that students had to be admitted to be considered non-supported. (Doc. 1 at 38.) Therefore, North-Aire could have discovered that its practices were not proper if it had made any inquiry into the legality of them, whether through Yavapai or the VA. Its alleged failure to do so adequately asserts reckless disregard.

Furthermore, the Complaint alleges that Yavapai's and North-Aire's own records illustrate that they failed to comply with the 85/15 rule from spring 2012 until spring 2015. (Doc. 1 at 12.) This allegation indicates that North-Aire acted with more than reckless disregard in this matter, and therefore the claims relating to North-Aire's alleged improper inclusion of part-time students, unadmitted students, and students that were not currently taking flight classes ("inactive flight students") as "non-supported" for the purposes of the 85/15 calculations are not dismissed.

### b. North-Aire's Inclusion of JTED Students as Non-Supported.

Hamilton adequately alleges that the Defendants' acted in reckless disregard by considering the JTED students as non-supported. While mistakes are not actionable, a defendant may not willfully ignore warnings regarding the legality of its actions. *See Bourseau*, 531 F.3d 1163. In *Bourseau*, the Ninth Circuit held that Bourseau acted "with at least reckless disregard" when he sought Medicare reimbursement for fees that were not related to patient services despite being warned

1  multiple times that doing so would be illegal. *Id.* at 1162–1167. Therefore, a
2  defendant's decision to willfully ignore warnings regarding the legality of its actions
3  is evidence of reckless disregard.

4  The Defendants in this case were aware that it was unlikely that the JTED
5  students could be considered non-supported. Sheila Jarrell, an employee at Yavapai,
6  informed a representative of North-Aire that "there is a statute stating [the programs]
7  can't count JTED students as civilians" during July of 2012, a full year prior to the
8  implementation of the program. (Doc. 1 at 38–39.)  Hamilton also alleges that he
9  personally warned Defendant Scott against pursuing the JTED program in December
10 of 2012.  (Doc. 1 at 35.)  It is plausible that these warnings should have put
11 Defendant Scott on notice that both he and his institution could not pursue the JTED
12 program and be in compliance with Regulation 4201.  When viewed in the light most
13 favorable to the Relator, the Defendants' decision to carry out the JTED program
14 despite these warnings illustrates an absence of mistake and the presence of reckless
15 disregard for the "requirements for payment." *Mackby*, 261 F.3d at 828.  Therefore,
16 Counts One and Two are not dismissed in regards to the JTED program.

17
18            **c.   North-Aire's Inclusion of Students Receiving Institutional Aid as Non-Supported.**

19 Hamilton alleges that the Defendants knowingly violated the FCA by considering
20 students as non-supported even though they paid tuition for non-veteran students in a
21 discriminatory manner.  (Doc. 1 at 41.)  The text of Regulation 4201 states that students
22 "receiving any assistance provided by an institution" may only be considered non-
23 supported if "if the institutional policy for determining the recipients of such aid is equal
24 with respect to veterans and nonveterans alike."  38 C.F.R. § 21.4201(e)(2)(iv).  Reckless
25 disregard may be shown in situations "where an individual has 'buried his head in the
26 sand' and failed to make simple inquiries which would alert him that false claims are
27 being submitted." *Bourseau*, 531 F.3d at 1168.
28 / / /

1    Hamilton adequately alleges "factual content that allows the court to draw the
2 reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*
3 *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Furthermore, pursuant to Rule
4 9(b), he provided the "the who, what, when, where, and how of the misconduct charged,
5 as well as what is false or misleading about [the purportedly fraudulent] statement, and
6 why it is false." *Cafasso*, 637 F.3d at 1055 (internal citations and quotations omitted).
7 Hamilton asserts that in fall 2011, NA representative David Yeley asked Hamilton to
8 assist him in providing an informational meeting for private students. (Doc. 1 at 35.)
9 After this meeting, Yeley offered to pay a non-supported student to enroll in the program.
10 (*Id.*) Yeley made similar offers to other students that attended the meeting, but never to a
11 veteran. (*Id.*) In between December 2011 and January 2012, Hamilton witnessed Yeley
12 enrolling and paying for Genecis Effa, Anthony Phillips, and Andrew Purkeypile. (*Id.*)
13 Despite this funding, these students were considered non-supported for the purposes of
14 the spring 2012 85/15 calculation. (Doc. 1 at 14.)

15   Hamilton adequately alleged scienter for his claim. North-Aire may not bury its
16 head in the sand and claim it did not know of any wrongdoing. *Bourseau*, 531 F.3d at
17 1168 (internal citations and quotations omitted). The text of Regulation 4201 states that
18 students "receiving any assistance provided by an institution" may be considered non-
19 supported only "if the institutional policy for determining the recipients of such aid is
20 equal with respect to veterans and nonveterans alike." 38 C.F.R. § 21.4201(e)(2)(iv).
21 The text of this regulation should have put North-Aire on notice that it likely violated the
22 regulations through its policies, and it had an obligation at that point to make a reasonable
23 inquiry to ensure that it was entitled to the funds from the VA. *Bourseau*, 531 F.3d at
24 1168. Hamilton's allegations allow the Court to make a reasonable inference that this
25 was not the case, and thus North-Aire may have acted with at least reckless disregard.
26 Therefore, the claims relating to North-Aire's tuition assistance will not be dismissed.
27 / / /
28 / / /

### d. North-Aire's Inclusion of Students in the Combined AVT Program as Non-Supported.

Hamilton adequately alleges that the Defendants knowingly violated the FCA by only calculating one 85/15 Rule ratio for the entirety of the combined AVT degree, which included four separate objectives. The text of Regulation 4201 states that "an 85–15 percent ratio must be computed for each course of study or curriculum leading to a separately approved educational or vocational objective." 38 C.F.R. § 21.4201(e)(1). The combined AVT degree in question had four different vocational objectives; Helicopter Operations, Airplane Operations and Management, Airplane Operations, and Unmanned Aircraft Systems Operator. (Doc. 1 at 8.) Therefore, the text of Regulation 4201 alone likely should have put North-Aire on notice that this practice was improper.

However, the Complaint alleges that the Defendants also had affirmative notice that the practice was improper. (Doc. 1 at 37.) In the summer of 2012, the Defendants' representative attended a meeting with Yavapai leadership to discuss the potential of a combined program. (*Id.*) During this meeting, a high-level Yavapai official, Mr. Morgan, voiced concerns over "how [the] VA would analyze the combined [AVT] degree for 85/15 compliance." (*Id.*) Despite this uncertainty, the Defendants agreed to institute the combined AVT degree program and began to include students from other course objectives within the program as non-supported students for the purposes of calculating the 85/15 ratio in the summer of 2013. (*Id.*) The Defendants' decision to combine students from other vocational objectives in a single 85/15 ratio despite the text of Regulation 4201 and vocalized concerns over its legality is sufficient to allege reckless disregard under the FCA. Therefore, Hamilton's claims under Count 1 and 2 are not dismissed in regards to the combined AVT degree program.

### 2. Claims Relating to North-Aire's Contributions to the Scholarship Program.

Hamilton adequately alleges that the Defendants knowingly violated the FCA by contributing to the "scholarship program intended to fund only non-veterans." The text of Regulation 4201 states that students "receiving any assistance provided by an institution"

may be considered nonsupported only "if the institutional policy for determining the recipients of such aid is equal with respect to veterans and nonveterans alike." 38 C.F.R. § 21.4201(e)(2)(iv). Furthermore, "in defining knowingly, Congress attempted to reach what has become known as the 'ostrich' type situation where an individual has 'buried his head in the sand' and failed to make simple inquiries which would alert him that false claims are being submitted." *Bourseau*, 531 F.3d at 1168 (9th Cir. 2008) (internal citations and quotations omitted).

Hamilton alleges that North-Aire and Yavapai College created and funded the Yavapai College Foundation ("YCF") for the sole purpose of funding "students who were not eligible for VA benefits to cover their tuition and fees." (Doc. 1 at 36.) As chair of the Yavapai committee that determined scholarship awards, Hamilton claims that he had personal knowledge of this policy. (*Id.*) According to the Complaint, North-Aire's contributions to this scholarship program allowed "Defendants to be able to falsely classify [the recipients] as non-supported" for the purposes of VA funding. (Doc. 1 at 41.) The text of Regulation 4201 should have put the Defendants on notice that creating and funding this scholarship program to provide assistance only to non-veterans would likely violate the terms of the 85/15 Rule, and yet they did it anyway. These facts "raise a right to relief above the speculative level," and thus the motion to dismiss in regards to the Defendants' creation and funding of the scholarship program is denied. *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555.

### 3. Claims Relating to North-Aire's Invoices to Yavapai for Flight Fees

"A person need not be the one who actually submitted the claim forms in order to be liable" under the FCA. *Mackby*, 261 F.3d at 827. In *Mackby*, the Ninth Circuit held that an individual that permits another to submit a false claim by supplying them with false information will be held liable under the False Claims Act. *Id.* at 828. Therefore, if a defendant provides another with the information that is subsequently used in the filing of a false claim, he can be held liable. *See United States v. Krizek*, 111 F.3d 934, 942

- 13 -

(D.C. Cir. 1997) (finding that a doctor that permitted his wife to submit claims on his behalf could be held liable under the FCA).

The Complaint alleges that the Defendants entered into a contractual relationship with Yavapai where they submitted their invoices for flight training to Yavapai, and Yavapai reimbursed them. (Doc. 1 at 9.) Yavapai only paid North-Aire after it received funding from the VA, and thus "[f]rom amounts VA paid [Yavapai] for the Airplane Program, most of the money ultimately went to [North-Aire]." Therefore, from the inception of this relationship, the Defendants assisted in recruiting candidates with the anticipation of obtaining VA funding. (Doc. 1 at 7.) These factual assertions are sufficient to allege that even though the Defendants were not the direct recipient of VA funding, they knew that their invoices would provide the basis for the claim to the VA and that a significant portion of the money they received would be from the government.

As in *Mackby*, the Defendants, through their invoices, provided Yavapai with false information that resulted in the filing of a false claim against the government even though North-Aire itself did not fill out the forms to the VA. *Mackby*, 261 F.3d at 827. Therefore, the Defendants may be held liable for every invoice submitted to Yavapai that "knowingly" contained false claims as alleged in Counts One and Two.

**B.    Count Three: Violation of 31 U.S.C. § 3729(a)(1)(G)**

Count Three of the Complaint asserts a reverse false claim act violation. Specifically, Hamilton alleges that the Defendants "have obtained overpayments from [the] VA because of their violations of the FCA." (Doc. 1 at 42.) It goes on to state that the Defendants' continued failure to self-report these overpayments and reimburse the government for them constitutes a violation of the FCA. (*Id.* at 43.)

To state a claim under the reverse FCA provision, the plaintiff "must demonstrate that it was owed a specific, legal obligation at the time that the alleged false record or statement was made, used, or caused to be made or used." *United States v. Q Int'l Courier, Inc.*, 131 F.3d 770, 773 (8th Cir. 1997). The proposed obligation "cannot be merely a potential liability: instead, in order to be subject to the penalties of the False

Claims Act, a defendant must have had a present duty to pay money or property that was created by a statute, regulation, contract, judgment, or acknowledgment of indebtedness." *Id.*; *See Olson v. Fairview Health Servs. of Minnesota*, 831 F.3d 1063, 1074 (8th Cir. 2016) (dismissing a reverse FCA claim on the grounds that the defendant "merely had a potential liability and not an established duty."). This stringent standard is due, in part, to the harsh nature of the penalties imposed on those that violate the provision. *See Olson*, 831 F.3d at 1074 (stating that without the standard, "a mandatory penalty of up to $10,000 for each claim and treble damages—would seem an unreasonable levy against individuals guilty only of "knowingly" receiving an overpayment from the government fisc.").

The reverse false claim's provision was amended in 2009, and the Ninth Circuit has yet to address how the amendment affects the definition of "obligation" under the statute. Hamilton argues that this amendment expands the definition of "obligation" to anyone that retained an overpayment from the government, including "persons who obtained money from the government based on claims they later learn to be false." (Doc. 64 at 23.) While the 2009 amendments broadened the scope of a reverse FCA claim, they still require a duty to repay the government to be established prior to imposing any liability. *See* 155 Cong. Rec. S4539 (daily ed. Apr. 22, 2009) (statement of Sen. Kyl) ("Obviously, we don't want the Government or anyone else suing under the False Claims Act to treble and enforce a fine before the duty to pay that fine has been formally established.") Furthermore, "receiving an overpayment from the government and intentionally keeping it is different from fraudulently obtaining the payment in the first place." *United States ex rel. Scharber v. Golden Gate Nat'l Senior Care LLC*, 135 F. Supp. 3d 944, 966 (D. Minn. 2015).

Hamilton does not allege that the Defendants "had a present duty to pay money or property that was created by a statute, regulation, contract, judgment, or acknowledgment of indebtedness."  *Q Int'l Courier, Inc.*, 131 F.3d at 773.  Hamilton alleges that "Defendants had a duty to self-report these overpayments," but he does not allege any

facts to explain why the Defendant' obligation is an established duty rather than a potential liability. (Doc. 1 at 42.) North-Aire did not have a duty to repay the government at the time it received the funds, and the VA has yet to order the Defendants to remit invoice payments it received from Yavapai. (Doc. 70 at 18.) Permitting the claim to go forward prior to establishing any duty to repay the government is too speculative. *United States ex rel. Scharber*, 135 F. Supp. 3d at 966; *See also Olson*, 831 F.3d at 1074 (dismissing a reverse FCA claim after the 2009 amendments on the grounds that the defendant "merely had a potential liability and not an established duty.").

Furthermore, Hamilton's Complaint does not allege facts that indicate that the Defendants were overpaid. Rather, the Complaint alleges that the Defendants mislead the VA to receive funds that they did not have a right to. As pointed out in *United States ex rel. Scharber*, "receiving an overpayment from the government and intentionally keeping it is different from fraudulently obtaining the payment in the first place." *Id.* at 966. The amendments to the reverse FCA provision should not be interpreted as a means to double punish the Defendants. *Id.* Therefore, Hamilton's reverse FCA claims are dismissed.

### C.    Count Four: Violation of 31 U.S.C. § 3729(a)(1)(C)

Hamilton's fourth claim is that the Defendants conspired with Yavapai to submit false or fraudulent claims and "by conspiring to use non-qualifying students to count toward the required 15% non-supported enrollment requirement." (Doc. 1 at 43.) The allegation goes on to state that the Defendants conspired to "use false statements and records to get false or fraudulent claims paid and by taking action in furtherance of these schemes to get false or fraudulent claims paid." (*Id.*)

The FCA imposes liability on anyone who "conspires to commit a violation" of the FCA. 31 U.S.C. § 3729(a)(1)(C). North-Aire and Yavapai were joint-ventures in the airplane program. (Doc. 1 at 6.) The allegations in the complaint assert that they conspired to obtain funding from the VA that they were not entitled to through this joint venture. (Doc. 1 at 10.) Therefore, Claim Four will not be dismissed.

/ / /

**CONCLUSION**

To state a claim under the FCA, the plaintiff must sufficiently allege that the defendant acted with more than mere negligence. At minimum, the facts must demonstrate that it is plausible that the defendant acted with reckless disregard. Hamilton alleged sufficient facts to illustrate reckless disregard as to Counts One, Two, and Four. Therefore, those claims will not be dismissed. However, the reverse FCA claim, Count Three is dismissed.

**IT IS THEREFORE ORDERED** that the Motion to Dismiss of Defendants North-Aire Aviation, LLC, Justin Scott, and Angela Scott (Doc. 49) is **granted in part and denied in part** as follows:

1. Count I, Submission of False Claims in violation of 31 U.S.C. § 3729(a)(1)(A), is not dismissed.

2. Count II, False Records or Statements in violation of 31 U.S.C. § 729(a)(1)(B), is not dismissed.

3. Count III, the reverse False Claims Act violation, is dismissed.

4. Count IV, False Claims Act Conspiracy, in violation of 31 U.S.C. § 3729(a)(1)(C), is not dismissed.

Dated this 6th day of December, 2016.

*/s/ G. Murray Snow*
Honorable G. Murray Snow
United States District Judge